IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JIMMY RAY GUYTON,

        Petitioner,        No. CIV S-09-0107-WBS-TJB

    vs.

M. MARTEL,

        Respondent.      <u>ORDER, FINDINGS AND RECOMMENDATIONS</u>

_____/

## I.  INTRODUCTION

Petitioner Jimmy Ray Guyton is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the following reasons, (1) it is recommended that the petition be denied; and (2) Petitioner's motion to expedite proceedings is denied.

## II.  PROCEDURAL HISTORY

1. "On September 8, 2006, [Petitioner] entered a negotiated plea" of "no contest to one count of voluntary manslaughter (Pen. Code, § 192, subd. (a)) with an enhancement for personal use of a firearm (*id.*, § 12022.5, subd. (a)) in exchange for dismissal of more serious charges and a stipulated upper-term sentence of 21 years."  Lodged Doc. 2, at 1, 3; *see* Lodged Doc. 5, Rep.'s Tr. 1-4.

2. "On November 3, 2006, [Petitioner] filed a motion to withdraw his plea, alleging

1

ineffective assistance of counsel at the time of the plea."  Lodged Doc. 2, at 3; *see* Lodged Doc. 6, Clerk's Tr. 70-76.

3. On April 27, 2007, Petitioner withdrew his motion to withdraw his plea.  Lodged Doc. 5, Rep.'s Tr. 36-37.

4. On May 4, 2007, Petitioner was sentenced according to the negotiated plea.  *Id.* at 40, 49-51.

5. On October 31, 2007, Petitioner filed his direct appeal in the California Court of Appeal, Third Appellate District.  *See* Lodged Doc. 1.

6. On April 22, 2008, the California Court of Appeal denied his appeal and affirmed judgment in a reasoned opinion.  Lodged Doc. 2, at 6.

7. Petitioner did not file a direct appeal in the California Supreme Court.  Resp't's Answer 10-11, ECF No. 12.  The record also does not show that Petitioner filed habeas petitions in the Superior Court or California Court of Appeal.  *See id.*

8. On May 22, 2008, Petitioner filed a habeas petition in the California Supreme Court.  *See* Lodged Doc. 3.

9. On October 22, 2008, the California Supreme Court denied the petition without a written opinion.  Lodged Doc. 4.

10. On January 13, 2009, Petitioner filed the instant federal habeas petition.

11. On June 4, 2009, Respondent filed an answer to the petition.

12. On June 29, 2009, Petitioner filed a traverse.

13. On March 15, 2010, Petitioner filed an "informal request . . . to contemplate expedited treatment of this case."  Pet'r's Letter 1, Mar. 15, 2010, ECF No. 15.

///
///
///
///

2

### III.   FACTUAL BACKGROUND[1]

In the early evening of April 26, 2005, Kevin Moore was walking toward his residence at the Parkview Apartments on Munson Way in Sacramento when [Petitioner] ran up behind him and said[,] "Don't move, nigga.  Don't move, nigga."  As Moore began to turn around, [Petitioner] shot him in the buttocks with a 9 millimeter handgun.  The shot "obliterated" the victim's femoral artery, causing him to bleed to death.

Shortly thereafter, [Petitioner] was arrested and admitted shooting the victim.  He told police, "I had to do it[,] man, I had to protect my family" and "something had to be done, I'm just tired of these Crips harassing my kids."

[Petitioner's] wife told police she had received a call from her sons' high school the day before and was told there had been a fight between her sons and students allegedly associated with the 29th Street Crips.  She said there were rumors of payback and she called [Petitioner] to pick the boys up from school.

On the day of the shooting, the victim had been seen walking around the apartment complex wearing a long leather coat and the police had been called because of concerns that he might be armed.  Officers were dispatched to the scene, detained and searched the victim, but found no weapons.

[Petitioner] shot the victim shortly thereafter.  He later told police he thought the victim was in the apartment complex to retaliate against his sons.

### IV.   APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).  This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

---

[1] These facts are from the California Court of Appeal's opinion issued on April 22, 2008.  *See* Lodged Doc. 2, at 2-3.  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see Moses v. Payne,* 555 F.3d 742, 746 n.1 (9th Cir. 2009); *Davis v. Woodford,* 384 F.3d 628, 638 (9th Cir. 2004).

the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521

U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359, 362 (9th Cir. 1999).  Under

AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.

Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

In applying AEDPA's standards, the federal court must "identify the state court decision

that is appropriate for our review."  *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).

Where more than one state court has adjudicated Petitioner's claims, a federal habeas court

analyzes the last reasoned decision.  *Id.* (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)

(finding presumption that later unexplained orders, upholding judgment or rejecting same claim,

rests upon same ground as prior order)).  A federal habeas court looks through ambiguous or

unexplained state court decisions to the last reasoned decision to determine whether that decision

was contrary to, or an unreasonable application of, clearly established federal law.  *Bailey v. Rae*,

339 F.3d 1107, 1112-13 (9th Cir. 2003).  "The question under AEDPA is not whether a federal

court believes the state court's determination was incorrect but whether that determination was

unreasonable--a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)

(citing *Williams*, 529 U.S. at 410).  When no state court reached the merits of a claim, the federal

court must review that claim de novo.  *See Chaker v. Crogan*, 428 F.3d 1215, 1221 (9th Cir.

2005), *cert. denied*, 547 U.S. 1128 (2006) (applying de novo standard of review to claim in

habeas petition that was not adjudicated on merits by state court); *Lewis v. Mayle*, 391 F.3d 989,

996 (9th Cir. 2004) (same); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) ("[W]hen it is

clear that a state court has not reached the merits of a properly raised issue, we must review it de novo.").

## V.  CLAIMS FOR REVIEW

The petition for writ of habeas corpus sets forth three grounds for relief.  First, Petitioner argues "imposition of the aggravated terms violated Petitioner's Sixth Amendment[] right to a jury trial, Fifth Amendment right [to] a fair trial and due process, and [the] Ex Post Facto Clause of the United States Constitution."  Pet'r's Pet. 15, ECF No. 1.  Second, Petitioner argues his plea agreement was breached because "he would have to do 85% of his sentence" and "was not receiving 50% (halftime)" credit.  *Id.* at 21.  Third, Petitioner alleges his trial and appellate counsel rendered ineffective assistance, violating the Sixth and Fourteenth Amendments.  *Id.* at 23.

### A.  Exhaustion

Respondent asserts "Petitioner has not exhausted his state remedies as to his claim of appellate counsel's asserted ineffective assistance of counsel . . . ."  Resp't's Answer 7.  Respondent admits, however, that "Petitioner has exhausted state remedies" for his "remaining issues."  *Id.*  Because exhaustion is a procedural defect that could prevent consideration of any of the claims in the current petition, *Rose v. Lundy*, 455 U.S. 509, 522 (1982) ("[W]e hold that a district court must dismiss habeas petitions containing both unexhausted and exhausted claims."), the exhaustion issue is addressed prior to addressing any claim.

#### 1.  Legal Standard for Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)).  "The state courts have been given a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal basis."  *Weaver v. Thompson*, 197 F.3d 359, 364 (9th

1    Cir. 1999) (citing *Duncan*, 513 U.S. at 365 (legal basis); *Correll v. Stewart*, 137 F.3d 1404,

2    1411-12 (9th Cir. 1998) (factual basis)).  "A petitioner has satisfied the exhaustion requirement

3    if:  (1) he has 'fairly presented' his federal claim to the highest state court with jurisdiction to

4    consider it, . . . or (2) he demonstrates that no state remedy remains available." *Johnson v.*

5    *Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).

6          To have exhausted via the first avenue, a petitioner must have presented each federal

7    claim as a federal claim to the California Supreme Court on (1) direct review (e.g., in a petition

8    for review); or (2) collateral review (e.g., in a petition for a writ of habeas corpus). *See Reiger v.*

9    *Christensen*, 789 F.2d 1425, 1427 (9th Cir. 1986); *see also O'Sullivan v. Boerckel*, 526 U.S. 838,

10   845 (1990); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("To 'fairly present' [a]

11   federal claim to the state courts, [a petitioner] had to alert the state courts to the fact that he was

12   asserting a claim under the United States Constitution." (citing *Duncan*, 513 U.S. at 365-66)).  A

13   "mere similarity between a claim of state and federal error is insufficient to establish

14   exhaustion." *Duncan*, 513 U.S. at 366.

15         A claim is considered exhausted via the second avenue "'if it is clear that [the habeas

16   petitioner's] claims are now procedurally barred under [state] law.'" *Gray v. Netherland*, 518

17   U.S. 152, 162-63 (1996) (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989)); *see also*

18   *Valerio v. Dir. of the Dep't of Prisons*, 306 F.3d 742, 770 (9th Cir. 2002) ("[T]he claim is

19   exhausted because it is procedurally barred.").  A claim is also "exhausted because a return to

20   state court for exhaustion would be futile." *Phillips v. Woodford*, 267 F.3d 966, 974 (9th Cir.

21   2001) (citation and internal quotation marks omitted).

22               2.  Analysis of Exhaustion

23         Here, Petitioner exhausted grounds one, two, and part of three (ineffective assistance of

24   trial counsel).  Petitioner only raised ground one, i.e., imposition of aggravated prison terms, in

25   his direct appeal to the California Court of Appeal. *Compare* Pet'r's Pet. 15, *with* Lodged Doc.

26   1, at ii.  Specifically, Petitioner argued the "imposition of the aggravated term was violative of

                                                    6

1   [Petitioner's] Sixth Amendment right to a jury trial, Fifth Amendment right to a fair trial and due

2   process, and the Ex Post Facto Clause of the United States Constitution." Lodged Doc. 1, at ii.

3        The Court of Appeal denied Petitioner's direct appeal on April 22, 2008. Lodged Doc. 2,

4   at 6. The Court of Appeal found Petitioner was procedurally barred from "this argument by

5   failing to raise" this "challenge at the time of sentencing." *Id.* at 4. The Court of Appeal noted

6   that "[a]t the time of sentencing on May 4, 2007, *Cunningham* had been decided. Yet

7   [Petitioner] failed to object to his upper term sentence on this basis." *Id.* (citing *Cunningham v.*

8   *California*, 549 U.S. 270, 274-75 (2007) (holding that defendant is entitled to jury finding on any

9   factor other than prior conviction before being sentenced to upper term)). The Court of Appeal

10  also held that "[w]hen [Petitioner] agreed to a plea deal providing for a sentence of 21 years, he

11  effectively admitted the existence of facts necessary to impose the upper term on the substantive

12  offense and enhancement." *Id.* at 6. Petitioner did not file a direct appeal in the California

13  Supreme Court, nor did he file habeas petitions in the Superior Court or Court of Appeal.

14       Instead, on May 22, 2008, Petitioner filed a habeas petition in the California Supreme

15  Court raising grounds one, two, and part of three (ineffective assistance of trial counsel). *See*

16  Lodged Doc. 3. In his California Supreme Court habeas petition, Petitioner argued: (1)

17  imposition of the aggravated term violated "Petitioner's Sixth Amendment right to a jury trial,

18  Fifth Amendment right to [a] fair trial[,] and due process," *id.* at 10 (raising ex post facto claim,

19  too, by alleging, "The United States Supreme Court had not yet filed it's [sic] disposition in

20  *Cunningham* at the time of the plea[,] [t]hereby undermining it's [sic] validity" (citation

21  omitted)); (2) "the state breached petitioner's plea agreement," *id.* at 6; and (3) his trial counsel

22  rendered ineffective assistance in permitting the first two alleged errors. *Id.* at 13. The record

23  does not show that Petitioner raised his ineffective assistance of appellate counsel claim in the

24  state courts.

25       The California Supreme Court denied Petitioner's habeas petition without a written

26  opinion on October 22, 2008. *See* Lodged Doc. 4. As part of the record, Respondent only

1   provided a copy of the "Docket (Register of Actions)," which stated the "[p]etition for writ of

2   habeas corpus [is] denied." *Id.*  No citations were listed in the decision announced in the

3   "Docket." *Id.*  An independent search by this Court also showed that the California Supreme

4   Court's decision was a "'postcard' denial," i.e., a decision "without comment or citation."

5   *Gaston v. Palmer*, 387 F.3d 1004, 1013 (9th Cir. 2004) (*citing Hunter v. Aispuro*, 982 F.2d 344,

6   348 (9th Cir. 1992)), *amended for other reasons by* 447 F.3d 1165 (9th Cir. 2006); *compare*

7   Supreme Court Minutes, 20 (Oct. 22, 2008), http://www.courtinfo.ca.gov/courts/minutes/

8   documents/SOCT2208.PDF (last visited Oct. 28, 2010) ("Petition for writ of habeas corpus [is]

9   denied" for Guyton (Jimmy) on H.C., No. S163777.), *with*, *e.g.*, *id.* ("Petition for writ of habeas

10  corpus [is] denied ([s]ee *People v. Duvall* (1995) 9 Cal.4th 464, 474.)" for Miller (Larry) on

11  H.C., No. S163764.).

12          "[T]he California Constitution provides that each of the three levels of state courts --

13  Superior Courts, Courts of Appeal, and the Supreme Court -- has 'original jurisdiction in habeas

14  corpus proceedings.'"  *Gaston*, 387 F.3d at 1010 (quoting Cal. Const. art. VI, § 10).  A California

15  prisoner may file an original habeas petition in each of the three courts, and each court may

16  exercise its original jurisdiction.  *See*, *e.g.*, *In re Clark*, 5 Cal. 4th 750, 760-62, 21 Cal. Rptr. 2d

17  509, 855 P.2d 729 (1993) (noting petitioner's first habeas application was filed in California

18  Supreme Court).  When the state's higher courts issue postcard denials, i.e., decisions without

19  comment or citation, the Ninth Circuit construes those denials as decisions on the merits.

20  *Gaston*, 387 F.3d at 1013 (citing *Hunter*, 982 F.2d at 348); *see In re Clark*, 5 Cal. 4th at 769 n.9,

21  21 Cal. Rptr. 2d 509, 855 P.2d 729 (noting "summary denial" of state habeas petition "does not

22  mean that the court has not considered the merits of the claims").

23          Here, Petitioner exhausted grounds one, two, and part of three (ineffective assistance of

24  trial counsel) since the highest state court with jurisdiction reviewed those grounds.  *Johnson*, 88

25  F.3d at 829.  The California Supreme Court denied those grounds on the merits when it denied

26  Petitioner's habeas petition without comment.  *Hunter*, 982 F.2d at 348.  However, Petitioner

failed to raise the other part of ground three (ineffective assistance of appellate counsel) in the state courts.  That part of ground three is either:  (1) unexhausted because no state court reviewed it, *Johnson*, 88 F.3d at 829; or (2) exhausted because it is procedurally barred.  *Phillips*, 267 F.3d at 974 ("The district court correctly concluded that [the] claims were nonetheless exhausted because 'a return to state court for exhaustion would be futile.'") (citation omitted); *see infra* Part V.D.4 (finding ineffective assistance of appellate counsel claim meritless).

Even if Petitioner's claim is unexhausted, an application for a writ of habeas corpus may be denied on the merits, notwithstanding the applicant's failure to exhaust available state remedies.  28 U.S.C. § 2254(b)(2).  A federal court considering a habeas petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).  The merits of Petitioner's ineffective assistance of appellate counsel claim will be addressed, and this matter is now ready for decision. For the following reasons, it is recommended that habeas relief be denied.

B.  Ground One:  Imposition of Aggravated Prison Terms

In ground one, Petitioner argues that his sentence violates:  (1) the Fifth and Sixth Amendments under *Cunningham*, 549 U.S. at 274-75, which holds that a defendant is entitled to a jury finding on any factor other than a prior conviction before being sentenced to an upper term; and (2) the Ex Post Facto Clause.  Pet'r's Pet. 15.

1.  State Court Decision

Here, the California Court of Appeal issued a reasoned opinion denying this ground in direct appeal, *see* Lodged Doc. 2, and the California Supreme Court summarily denied this ground in Petitioner's original state habeas petition.  *See* Lodged Doc. 4.  "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst*, 501 U.S. at 803; *see Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).  Since the California Supreme Court issued a "later unexplained order . . . rejecting"

9

1  ground one, *Ylst*, 501 U.S. at 803, the California Court of Appeal's reasoning will be considered.

2  *Brodit v. Cambra*, 350 F.3d 985, 987 (9th Cir. 2003), *cert. denied*, 542 U.S. 925 (2004).

3         2.  *Cunningham* Claim

4         a.  Procedural Bar:  Contemporaneous Objection Rule

5         Respondent contends "this Court should not consider the forfeited *Cunningham* issue"

6  because it is procedurally barred.  Resp't's Answer 14.  According to Respondent, "Petitioner

7  made no Sixth Amendment objection to his sentence although the sentencing judge began the

8  proceedings by stating his intent to follow the negotiated disposition and by asking whether there

9  was any legal cause why sentence should not by [sic] pronounced."  *Id.*  Thus, Respondent argues

10  Petitioner's *Cunningham* claim should be summarily dismissed for lack of objection.  *Id.*

11         i.  Legal Standard for Contemporaneous Objection Rule

12         Procedural default is an affirmative defense.  *Bennett v. Mueller*, 322 F.3d 573, 585 (9th

13  Cir. 2003).  In order to bar federal habeas corpus review of a petitioner's claims, the procedural

14  rule cited by the California Supreme Court must be adequate and independent to support the

15  judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *Fields v. Calderon*, 125

16  F.3d 757, 760 (9th Cir. 1997).  "A state ground is independent and adequate only if the last state

17  court to which the petitioner presented the claim 'actually relied' on a state rule that was

18  sufficient to justify the decision."  *Carter v. Giurbino*, 385 F.3d 1194, 1197 (9th Cir. 2004)

19  (citing *Valerio v. Crawford*, 306 F.3d 742, 773 (9th Cir. 2002) (en banc)).  The burden of

20  proving a state procedural ground is independent and adequate is upon the state of California.

21  *Bennett*, 322 F.3d at 582-85.

22         "Under Section 353 of the California Evidence Code, also known as the

23  'contemporaneous objection rule,' evidence is admissible unless there is an objection, the

24  grounds for the objection are clearly expressed, and the objection is made at the time the

25  evidence is introduced."  *Melendez v. Pliler*, 288 F.3d 1120, 1125 (9th Cir. 2002).  Under

26  California's "contemporaneous objection rule," California courts construe broadly the sufficiency

of objections that preserve issues for appellate review, focusing on whether the trial court had a

reasonable opportunity to rule on the merits of the objection.  *Id.*  The Ninth Circuit held "that

the rule is consistently applied when a party has failed to make *any* objection . . . ."  *Id.* (citing

*Garrison v. McCarthy*, 653 F.2d 374, 377 (9th Cir. 1981)).

ii.  Analysis of Contemporaneous Objection Rule

Here, Petitioner's *Cunningham* claim is barred because he failed to object at sentencing.

In denying this ground for relief, the Court of Appeal properly recognized, "At the time of

sentencing on May 4, 2007, *Cunningham* had been decided, yet [Petitioner] failed to object to his

upper term sentence on this basis."  Lodged Doc. 2, at 4.   The record reveals the following:

> THE COURT:  All right.  This matter is on for judgment and
> sentence this afternoon.
>
> I have reviewed the presentencing report.  I am prepared to proceed
> in accordance with the negotiated disposition in this case.
>
> Is there any legal cause why judgment and sentence should not be
> pronounced?
>
> [DEFENSE COUNSEL]:  No, Your Honor.

Lodged Doc. 5, Rep.'s Tr. 40.  Petitioner also admitted, "I understand that I have a stipulated

deal that I've taken 21 years, no matter what I say . . . ."  *Id.* at 48.  Thus, Petitioner's

*Cunningham* claim is procedurally barred.

b.  Merits of *Cunningham* Claim

Still, the Court of Appeal addressed the merits of Petitioner's challenge.  *See* Lodged

Doc. 2, at 4 ("However, to forestall a claim of ineffective assistance of counsel, we shall consider

[Petitioner's] *Cunningham* argument.").  "If it is unclear whether the state court dismissed the

petition because of a state law procedural default or on the merits of the petitioner's federal

constitutional claims, a federal court may review the merits of the claims presented."  *Loveland*

*v. Hatcher*, 231 F.3d 640, 643 (9th Cir. 2000) (citing *Siriponqs v. Calderon*, 35 F.3d 1308, 1317

(9th Cir. 1994)).  Recently, the Ninth Circuit stated that "where . . . the state court did not 'clearly

1   and expressly' rely *solely upon* procedural default in rejecting a petitioner's claim, this court may

2   address the merits of that claim." *Belmontes v. Ayers*, 529 F.3d 834, 856 (9th Cir. 2008)

3   (emphasis added).

4       Additionally, the California Supreme Court denied Petitioner's original state habeas

5   petition without comment or citation, which is construed as a decision on the merits. *Hunter*,

6   982 F.2d at 348. This decision effectually removes the procedural default applied in part by the

7   Court of Appeal when denying Petitioner's direct appeal. *Ylst*, 501 U.S. at 801 ("State

8   procedural bars . . . may expire because of later actions by state courts. If the last state court to

9   be presented with a particular federal claim reaches the merits, it removes any bar to

10  federal-court review that might otherwise have been available."). Thus, the merits of Petitioner's

11  *Cunningham* claim must be addressed.

12                  i. Legal Standard for Imposition of Upper Term Sentence

13      The United States Supreme Court clearly stated that "'[o]ther than the fact of a prior

14  conviction, any fact that increases the penalty for a crime beyond the prescribed statutory

15  maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Blakely v.*

16  *Washington*, 542 U.S. 296, 301 (2004) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490

17  (2000)); *accord Cunningham*, 549 U.S. at 274-75. "[S]tatutory maximum" means "the

18  maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury*

19  *verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303.

20      Under California's determinate sentencing law ("DSL"), "[t]he statute defining the

21  offense prescribes three precise terms of imprisonment--a lower, middle, and upper term

22  sentence." *Cunningham*, 549 U.S. at 277. Because "an upper term sentence may be imposed

23  only when the trial judge finds an aggravating circumstance[,]" *id.* at 288, the DSL's middle term

24  is "the relevant statutory maximum." *Id.* In *Cunningham*, the Supreme Court held that

25  California's DSL violates a defendant's right to a jury trial to the extent it permits a trial court to

26  impose an upper term based on facts found by the court rather than by a jury. *Id.* at 293.

12

ii.  Analysis of *Cunningham* Claim

Here, the Court of Appeal reasonably held that Petitioner "may not claim a violation of *Cunningham* when the trial court imposes the sentence to which he agreed." Lodged Doc. 2, at 6.  At sentencing, Petitioner acknowledged, "I understand that I have a stipulated deal that I've taken 21 years, no matter what I say . . . ."  Lodged Doc. 5, Rep.'s Tr. 48.

"The People, as well as a defendant, are entitled to enforce the terms of a plea bargain." *People v. Cunningham*, 49 Cal. App. 4th 1044, 1048, 57 Cal. Rptr. 2d 179 (1996) (citing *People v. Collins*, 21 Cal. 3d 208, 214, 145 Cal. Rptr. 686, 577 P.2d 1026 (1978)); *see also Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement[,] . . . such promise must be fulfilled.").  "The state, in entering a plea bargain, generally contemplates a certain ultimate result; integral to its bargain is the defendant's vulnerability to a term of punishment." *Cunningham*, 49 Cal. App. 4th at 1048 (citation and internal quotation marks omitted).  Contrary to Petitioner's assertion, *see* Pet'r's Pet. 16, it was unnecessary for a jury to make a finding on the upper term sentence because Petitioner, as part of his plea bargain, waived his right to a jury trial, as well as his right to have the jury determine whether the upper term should be imposed.  *See Boykin v. Alabama*, 395 U.S. 238, 243 (1969) ("Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial.  First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth.  Second, is the right to trial by jury.  Third, is the right to confront one's accusers." (citations omitted)); *see also* Lodged Doc. 5, Rep.'s Tr. 3 (showing Petitioner waived, *inter alia*, jury trial right).

Additionally, the Supreme Court has not held that *Cunningham* applies to bargained-for sentences.  Rather, the Supreme Court noted that "[w]hen a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." *Blakely v. Washington*, 542 U.S. 296, 310

(2004); *but see* CAL. R. CT. 4.412(a) ("It is an adequate reason for a sentence or other disposition that the defendant, personally and by counsel, has expressed agreement that it be imposed and the prosecuting attorney has not expressed an objection to it."); *People v. Witherow*, 142 Cal. App. 3d 485, 487, 190 Cal. Rptr. 899 (1983) ("In sentencing a defendant to an upper term pursuant to a plea bargain the court, in stating its reasons for that sentence choice, need only give the bargain as its reason and need not give any other reason." (internal quotation marks and citation omitted)).  Under California law, only one aggravating factor is necessary to authorize an upper term sentence.  *Butler v. Curry*, 528 F.3d 624, 641 (9th Cir. 2008).

Here, Petitioner stipulated to relevant facts and consented to judicial factfinding.  At sentencing, Petitioner's counsel asserted, "[Petitioner] is asking for permission to speak directly to the Court."  Lodged Doc. 5, Rep.'s Tr. 48.  The Superior Court allowed Petitioner to proceed.  *Id.*  Petitioner then stated, "I understand that I have a stipulated deal that I've taken 21 years, no matter what I say . . . ."  *Id.*  Petitioner explained, "I shot [the victim] in the leg, not trying to kill him."  *Id.* at 49.  Petitioner added, "*You can give me what you all want to give me. . . .* Give me my time; I'll take it."  *Id.* (emphasis added).  Accordingly, the Superior Court sentenced Petitioner to:  (1) the upper term for the voluntary manslaughter charge "because of the nature, seriousness and circumstances of this crime," *see* CAL. PENAL CODE § 193(a); and (2) the upper term for the firearm enhancement because Petitioner "engaged in the conduct that indicates" Petitioner was " a danger to society," *see id.* § 12022.5(a).  Lodged Doc. 5, Rep.'s Tr. 49; *cf* CAL. R. CT. 4.421(a)(1) (including aggravating factor where "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness"); *id.* 4.412(a)*; Witherow*, 142 Cal. App. 3d at 487, 190 Cal. Rptr. 899.

Even if the trial court violated Petitioner's Sixth Amendment rights, any error was harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *See Butler*, 528 F.3d at 648-49 (conducting harmless error review of *Apprendi* violation).  Applying *Brecht*, a habeas court must

1   determine whether "the error had a substantial and injurious effect on [Petitioner's] sentence."

2   *Id.* at 648 (quoting *Hoffman v. Arave*, 236 F.3d 523, 540 (9th Cir. 2001)) (internal quotation

3   marks omitted).   "Under that standard, we must grant relief if we are in 'grave doubt' as to

4   whether a jury would have found the relevant aggravating factors beyond a reasonable doubt."

5   *Id.* (citing *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).

6           Here, any purported error was harmless.   Under Rule 4.421(b)(2) of the California Rules

7   of Court, a defendant's numerous prior convictions as an adult justifies imposing an upper term

8   sentence.   Petitioner had three prior convictions for:  (1) unlawful possession of cocaine; (2)

9   grand theft; and (3) vandalism.   Lodged Doc. 6, Clerk's Tr. 114-15.   Petitioner's three prior

10  convictions are "numerous" within the meaning of Rule 4.421.   *See People v. Searle*, 213 Cal.

11  App. 3d 1091, 1098, 261 Cal. Rptr. 898 (1989) (finding three prior convictions for driving while

12  intoxicated were "numerous" in context of predecessor to Rule 4.421).   Although prior

13  convictions are excepted from the jury submission requirement, here, ample evidence existed for

14  a jury to render a verdict beyond a reasonable doubt on at least one aggravating circumstance.

15  *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction,

16  any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

17  submitted to a jury, and proved beyond a reasonable doubt.").   Upper term imposition on both the

18  voluntary manslaughter count and firearm enhancement were proper, and the Court of Appeal

19  reasonably denied Petitioner's *Cunningham* claim on the merits.

20                  3.  Ex Post Facto Claim

21          Petitioner's federal habeas petition is unclear as to how upper term imposition violates

22  the Ex Post Facto Clause.   Instead, he merely cites to the Ex Post Facto Clause without further

23  explanation:  "Imposition of the aggravated terms violated Petitioner's Sixth Amendment[] right

24  to a jury trial, Fifth Amendment right [to] a fair trial and due process, and Ex Post Facto Clause

25  of the United States Constitution."   Pet'r's Pet. 15.   Petitioner's California Supreme Court habeas

26  petition and his direct appeal brief to the Court of Appeal provide a little more insight.   In both

1   the brief and habeas petition, Petitioner argues "the United States Supreme Court has not yet

2   filed its decision in *Cunningham* at the time of the plea, thereby undermining its validity."

3   Lodged Doc. 1, at 4 (citation omitted); *see* Lodged Doc. 3, at 10.  Petitioner's direct appeal, state

4   habeas petition, and federal habeas petition then use *Cunningham* to attempt to explain why the

5   middle term, and not the upper term, applies here.  Lodged Doc. 1, at 5; Lodged Doc. 3, at 10;

6   Pet'r's Pet. 15.

7           Article I, Section 10 of the United States Constitution provides:  "No State shall . . . pass

8   any . . . ex post facto law."  The Ex Post Facto Clause prohibits states from enacting any law

9   "which imposes a punishment for an act which was not punishable at the time it was committed;

10  or imposes additional punishment to that then prescribed."  *Weaver v. Graham*, 450 U.S. 24, 28

11  (1981) (quoting *Cummings v. Missouri*, 71 U.S. 277, 325-26 (1866)).  "[T]he focus of the ex post

12  facto inquiry is not on whether a legislative change produces some sort of 'disadvantage,' . . . but

13  on whether any such change alters the definition of criminal conduct or increases the penalty by

14  which a crime is punishable."  *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995).  "A

15  law does not violate the clause if it 'created only the most speculative and attenuated risk of

16  increasing the measure of punishment attached to the covered crimes.'"  *Brown v. Palmateer*,

17  379 F.3d 1089, 1093 (9th Cir. 2004) (quoting *Morales*, 514 U.S. at 513).

18          Here, Petitioner fails to provide any specific argument or explanation in either his federal

19  habeas petition or traverse to support this claim beyond bare allegations of unconstitutionality.

20  Without presenting additional facts or law, Petitioner has failed to establish that he is entitled to

21  relief on this claim.  Conclusory allegations which are not supported by a statement of specific

22  facts do not warrant habeas relief.  *See Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1970).

23          Under a very liberal reading of the petition, Petitioner could be arguing that the DSL

24  changed which term was the statutory maximum, and the Superior Court improperly found that

25  the upper term, rather than the middle term, was the statutory maximum when sentencing

26  Petitioner.  *See* Pet'r's Pet. 15-17; *cf. Cunningham*, 549 U.S. at 288 ("[T]he middle term

1  prescribed in California's statutes, not the upper term, is the relevant statutory maximum.").

2  Assuming this occurred, Petitioner still would have received the upper term sentence because an

3  aggravating circumstance elevated him from the middle term to the upper term.  *See supra* Part

4  V.B.2.b.  The length of the sentence provided for under the middle or upper term was not

5  changed.  As Petitioner's punishment involves the upper term no matter under which version of

6  the law he was sentenced, this claim does not warrant habeas relief.

7        C.  Ground Two:  Plea Agreement Breach

8        In ground two, Petitioner contends his plea agreement and due process rights were

9  violated because, under his sentence, he "was not receiving 50% (halftime) as was [his]

10 reasonable understanding."  Pet'r's Pet. 21.  According to Petitioner, "[a]t no time during

11 negotiations did the prosecutor or his attorney state that he would have to do 85% of his

12 sentence."  *Id.* (emphasis omitted).  Petitioner also argued "the court never ordered that

13 [Petitioner] would not be eligible for halftime (50%) nor did the court order 85%."  *Id.*

14        1.  State Court Decision

15       Here, the California Supreme Court summarily denied ground two, and no state court

16 issued a reasoned decision.  *See* Lodged Doc. 4.  "[W]hen no reasoned state court decision

17 denying a habeas petition exists, the federal court should perform an independent review of the

18 record to ascertain whether the state court decision was objectively unreasonable."  *Pham v.*

19 *Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).  Since ground two was never the

20 subject of a reasoned state court opinion, "an independent review of the record" will be

21 conducted to determine whether the California Supreme Court's decision denying this claim was

22 contrary to, or involved an unreasonable application of, clearly established federal law.  *Id.*

23        2.  Failure to Present a Federal Question

24       "In conducting habeas review, a federal court is limited to deciding whether a conviction

25 violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S.

26 62, 68 (1991).  Habeas relief is not available for an alleged error in the interpretation or

17

1  application of state law.  *See id.* at 67-68.  A federal district court has "no authority to review a

2  state's application of its own laws." *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990).  Instead,

3  federal courts may grant habeas relief only to correct errors of federal constitutional magnitude.

4  *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989).

5       Here, Petitioner does not allege that he was deprived of any federally protected right.

6  "[A] state court's misapplication of its own sentencing laws does not justify federal habeas

7  relief." *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994).  Instead, Petitioner's claim

8  involves only alleged state law errors, and is not cognizable on federal habeas review.  *See*

9  *generally Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (explaining federal petitioner

10  may not "transform a state-law issue into a federal one merely by asserting a violation of due

11  process"), *cert. denied*, 522 U.S. 881 (1997).  Petitioner's claim is not reviewable and must be

12  dismissed.

13                    3.   Merits of Plea Agreement Breach

14       Even if the merits are reviewed, the California Supreme Court reasonably denied

15  Petitioner's breach of plea agreement claim.  Under California law, "each defendant sentenced

16  under the Three Strikes law generally must serve *at least* four-fifths of his or her sentence prior

17  to becoming eligible for parole." *People v. Barella*, 20 Cal. 4th 261, 263, 84 Cal. Rptr. 2d 248,

18  975 P.2d 37 (1999) (emphasis added); *see* CAL. PENAL CODE § 1170.12(a)(5) ("The total amount

19  of [good time and work time] credits awarded . . . shall not exceed one-fifth of the total term of

20  imprisonment imposed . . . ."); *see also id.* § 2933.1(a)-(b) ("Notwithstanding any other law, any

21  person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue

22  no more than 15 percent of worktime credit, as defined in Section 2933. . . . The 15-percent

23  limitation . . . shall apply whether the defendant is sentenced under Chapter 4.5 (commencing

24  with Section 1170) of Title 7 of Part 2 or sentenced under some other law."); *see generally id.* §

25  667.5(c)(1), (8) (listing "[m]urder or voluntary manslaughter" and "[a]ny felony in which the

26  defendant uses a firearm which use has been charged and proved as provided in . . . [s]ection

12022.5"). Here, Petitioner was undisputedly sentenced under the Three Strikes law:

> THE COURT:  Correct.  And [Petitioner], do you understand that the plea that you're going to enter to the offense is a strike within the California three strikes law?
>
> [PETITIONER]:  Yes.

Lodged Doc. 5, Rep.'s Tr. 2.  Thus, under the Three Strikes law, Petitioner, who pleaded to voluntary manslaughter and a gun enhancement under section 12022.5(a), must serve at least eighty-five percent of his sentence because he can "accrue no more than 15 percent of worktime credit."  CAL. PENAL CODE § 2933.1(b); *see id.* § 667.5(c)(1), (8).

In *People v. Barella*, the California Supreme Court held "neither the federal or the state Constitution, nor California's judicially declared rules of criminal procedure, required the trial court to advise defendant, prior to his guilty plea, that he would be ineligible for release from prison until he had served [a minimum of] four-fifths of his sentence."  20 Cal. 4th at 263, 84 Cal. Rptr. 2d 248, 975 P.2d 37; *see* CAL. PENAL CODE § 1170.12(a)(5); *see also id.* § 2933.1(a)-(b).  The California Supreme Court elaborated:

> [C]ourts need not inform the defendant of all the contingencies and possibilities that may ensue from a plea of guilty.  Nor does the fair and efficient administration of justice require that the trial court inform the defendant of the theoretical minimum portion of a sentence that will have to be served in custody (taking into account potential in-prison conduct or work credits) when he or she pleads guilty to a term whose potential length may be greater; such knowledge, although important to the defendant who pleads guilty, is not required to facilitate a knowing and intelligent decision to plead. (See *Hunter v. Fogg*, *supra*, 616 F.2d 55, 61.)  An advisement of the statutory or stipulated sentence--without reference to permissible credits--is sufficient.
>
> . . . [W]e conclude that a defendant is not entitled to withdraw or set aside a guilty plea on the ground that the trial court, in accepting the plea, failed to advise the defendant of a limit on good-time or work-time credits available to the defendant.

*Barella*, 20 Cal. 4th at 256, 84 Cal. Rptr. 2d 248, 975 P.2d 37.  As stated earlier, here, the Superior Court advised Petitioner that "the plea that [he was] going to enter to the offense is a strike within the California three strikes law[.]"  Lodged Doc. 5, Rep.'s Tr. 2.  Petitioner was also

advised by his counsel, on the record, that his stipulated sentence "will be for a term of 21 years." *Id.* at 1.  This "advisement of the statutory or stipulated sentence--without reference to permissible credits--is sufficient." *Barella*, 20 Cal. 4th at 256, 84 Cal. Rptr. 2d 248, 975 P.2d 37.

Additionally, nothing in the record suggests there was an explicit or implicit agreement among the parties regarding how much of the twenty-one year term Petitioner would be required to serve.  "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).  Where a prosecutor induces a plea bargain by promising the defendant a specific release date, a federal habeas court may order specific performance of that agreement. *Buckly v. Terhune*, 441 F.3d 688, 699 (9th Cir. 2006).

Here, Petitioner does not show his plea agreement was induced by any promise that he would be "eligible for halftime (50%)." Pet'r's Pet. 21.  The only evidence of any agreement is Petitioner's own declaration, in which he states, "It was my reasonable understanding that I would be eligible for 50% good time, work credits during my incarceration." *Id.* at 26.  However, the record contains no evidence of an agreement between Petitioner and the prosecutor that Petitioner would serve half of his sentence.  At the hearing, Petitioner affirmed that no "threats or promises [had] been made causing [him] to enter this plea." Lodged Doc. 5, Rep.'s Tr. 3.  Petitioner also unambiguously stated, "I have a stipulated deal that I've taken 21 years, no mater what I say . . . ." *Id.* at 48.  Thus, the California Supreme Court reasonably denied Petitioner's breach of plea agreement claim, and this claim fails.

D.  Ground Three:  Ineffective Assistance of Counsel

In ground three, Petitioner asserts his trial counsel and appellate counsel rendered ineffective assistance. Pet'r's Pet. 23.  Specifically, Petitioner states his trial counsel was ineffective because:  (1) "petitione's [sic] counsel failed to object to petitioner's upper-term sentence;" and (2) defense counsel failed to "clarify petitioner's reasonable understanding of

1   half-time (50% goodtime)." *Id.* Petitioner also alleges his appellate counsel was ineffective

2   because "a simple writ of habeas corpus petition by petitioner's appellate counsel would have

3   resulted in a more favorable outcome . . . ." *Id.* at 23-24.

4          1.  State Court Decision

5         Here, the California Supreme Court summarily denied part of ground three (ineffective

6   assistance of trial counsel).  *See* Lodged Doc. 4.  Like ground two, since this part of ground three

7   was never discussed in a reasoned state court opinion, "an independent review of the record" will

8   be conducted to determine whether the California Supreme Court's decision to deny this claim

9   was contrary to, or involved an unreasonable application of, clearly established federal law.

10  *Pham*, 400 F.3d at 742.  Since no state court reached the merits of the other part of ground three

11  (ineffective assistance of appellate counsel), this part of ground three is reviewed de novo.

12  *Chaker*, 428 F.3d at 1221.

13         2.  Legal Standard for Ineffective Assistance of Counsel Claim

14        The Sixth Amendment guarantees the effective assistance of counsel.  For a guilty or no

15  contest plea, a petitioner is denied effective assistance of counsel when counsel's plea advice

16  resulted in an involuntary plea.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a

17  criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense

18  with which he is charged, he may not thereafter raise independent claims relating to the

19  deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may

20  only attack the voluntary and intelligent character of the guilty plea."); *see also* CAL. PENAL

21  CODE § 1016 ("[A] plea of nolo contendere shall be considered the same as a plea of guilty . . . .

22  The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a

23  plea of guilty for all purposes."); *Ortberg v. Moody*, 961 F.3d 135, 137-38 (9th Cir. 1992)

24  (applying *Tollett* to no contest plea).

25        Under *Strickland v. Washington*, it must first be shown that, considering all the

26  circumstances, counsel's performance fell below an objective standard of reasonableness.  466

U.S. at 687-88.  A strong presumption exists "that counsel's performance falls within the 'wide range of professional assistance,'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689), and that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689).

A finding of ineffective assistance of counsel also requires a showing of actual prejudice caused by counsel's deficient performance. *Strickland*, 466 U.S. at 693-94.  Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  To show prejudice for a guilty or no contest plea, there must exist a reasonable probability that, but for counsel's errors, the petitioner "would not have pleaded but would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Langford*, 110 F.3d at 1386.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697.  Since the petitioner must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail.  However, certain instances are legally presumed to result in prejudice, e.g., where there was an actual or constructive denial of the counsel's assistance, or where the State interfered with counsel's assistance. *Id.* at 692; *see United States v. Cronic*, 466 U.S. 648, 659 & n.25 (1984).

### 3.  Analysis of Ineffective Assistance of Trial Counsel Claim

Here, the California Supreme Court reasonably denied Petitioner's ineffective assistance of trial counsel claim.  Petitioner fails to demonstrate prejudice resulting from his trial counsel's representation. *See Strickland*, 466 U.S. at 697; *Weaver v. Palmateer*, 455 F.3d 958, 966 (9th Cir. 2006) ("We are well-advised to bypass scrutinizing a criminal-defense attorney's representation if the defendant cannot show that he was prejudiced by it.").  Petitioner cannot demonstrate prejudice for trial counsel's failure to raise Petitioner's aggravated term imposition

1   claim; it was not meritorious.  *See supra* Part V.B.

2       Petitioner also cannot demonstrate there is a reasonable probability that, but for trial

3   counsel's failure to "clarify petitioner's reasonable understanding of half-time," Pet'r's Pet. 23,

4   he would have insisted on going to trial.  The plea agreement allowed Petitioner to avoid a

5   possible sentence of forty years to life.  Lodged Doc. 5, Rep.'s Tr. 47.  Petitioner admitted he

6   shot the victim to the police.  As the Court of Appeal stated, Petitioner "told police, 'I had to do

7   it[,] man . . . ."  Lodged Doc. 2, at 2.  The twenty-one year old victim was unarmed, was on

8   neither probation or parole, and was not known to be a gang member or affiliate.  Lodged Doc. 6,

9   Clerk's Tr. 96-97.  Petitioner understood the seriousness of the charges he faced and the extent of

10  his exposure if found guilty.  He was also aware of the State's evidence against him.

11      Further, nothing in the record indicates Petitioner's no contest plea was involuntary.  *See*

12  *Tollett*, 411 U.S. at 267-68; *Hudson v. Unites States*, 272 U.S. 451, 455 (1926) (finding no

13  contest plea "is an admission of guilt for the purposes of the case").  Here, the record reflects

14  Petitioner's no contest plea was knowing, voluntary, and intelligent:

15          THE COURT:  Any corrections, additions, or objections to the
        factual basis?

16

17          [DEFENSE COUNSEL]:  Not at this time.

18          THE COURT:  [Defense counsel], do you agree there is a factual
        basis for the plea?

19          [DEFENSE COUNSEL]:  Yes, your Honor.  To the voluntary
        manslaughter.

20

21          THE COURT:  Correct.  And [Petitioner], do you understand that
        the plea that you're going to enter to the offense is a strike within
        the California three strikes law?

22

23          [PETITIONER]:  Yes.

        . . . .

24

25          THE COURT:  You have a right to plead not guilty and to have a
        jury trial.  You have the right to see and hear the witnesses against
        you and your attorney question those witnesses.  And you have the
26          right to remain silent and not incriminate yourself.  Do you

1   understand and give up those rights?

2   [PETITIONER]:  Yes, sir.

3   THE COURT:  Counsel join the jury waiver?

4   [DEFENSE COUNSEL]:  Yes.  Thank you.

5   [DEPUTY DISTRICT ATTORNEY]: People join.

6   THE COURT:  Are you under the influence of alcohol, drugs, or
    any medication?

7

8   [PETITIONER]:  No, sir.

    THE COURT:  Have any threats or promises been made causing
9   you to enter this plea?

10  [PETITIONER]:  No, sir.

11  THE COURT:  At the conclusion of the period of incarceration,
    [Petitioner], you would be granted parole by the Board of Prison
12  Terms.  If you were to violate your parole, you could be returned to
    state prison custody for up to one year for each violation, not to
13  exceed a total of four years.  Do you understand that?

14  [PETITIONER]:  Yes, sir.

15  THE COURT:  To the offense of a violation of Penal Code section
    192 sub A, voluntary manslaughter, as reasonably related to the
16  offense alleged in Count One, that on or about April 26, 2005 you
    unlawfully caused the killing of Kevin Moore, a human being, and
17  that this is a victim offense within the meaning of the California
    three strikes law; and further, that in the commission of this
18  offense you personally used a firearm, what is your plea?

19  [PETITIONER]:  No contest.

20  THE COURT:  I find there is a factual basis for the plea, that the
    plea and waivers were made knowingly, intelligently, and
21  voluntarily.  And I accept your plea and the conditions as stated to
    record, [Petitioner], and I find you guilty of a violation of Penal
22  Code section 192(a), voluntary manslaughter as reasonably related to
    the offense alleged in Count One by your plea of no contest.
23  And I further find, as alleged, this is a strike conviction within the
    meaning of the California three strikes law, in that did you
24  personally use a firearm in violation of Penal Code section
    12022.5(a).

25
    This matter is referred to the department of probation for
26  preparation of presentencing report.

1     . . . .

2     We'll return here for judgment and sentence.

3 Lodged Doc. 5, Rep.'s Tr. 2-4.  Under these circumstances, the California Supreme Court

4 reasonably denied Petitioner's ineffective assistance of trial counsel claim.

5     4.  Analysis of Ineffective Assistance of Appellate Counsel Claim

6     Petitioner's ineffective assistance of appellate counsel claim also fails.  His appellate

7 counsel was not ineffective for declining to raise these meritless issues in a state habeas petition.

8 *See supra* Part V.B-D.  Thus, Petitioner's ineffective assistance of appellate counsel claim is

9 meritless.

10     VI.  MOTION FOR REVIEW

11     On March 15, 2010, Petitioner filed a motion to expedite proceedings.  Specifically,

12 Petitioner requests "the prompt processing of [his] Habeas Petition in the District Court."  Pet'r's

13 Letter 1, Mar. 15, 2010.  With this findings and recommendation, Petitioner's motion is moot,

14 and the motion is denied.

15     VII.  CONCLUSION

16     For the foregoing reasons, IT IS HEREBY ORDERED that Petitioner's March 15, 2010

17 motion to expedite proceedings is denied.

18     IT IS HEREBY RECOMMENDED that Petitioner's application for writ of habeas corpus

19 be DENIED.

20     These findings and recommendations are submitted to the United States District Judge

21 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one

22 days after being served with these findings and recommendations, any party may file written

23 objections with the court and serve a copy on all parties.  Such a document should be captioned

24 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

25 shall be served and filed within seven days after service of the objections.  Failure to file

26 objections within the specified time may waive the right to appeal the District Court's order.

*Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).  In any objections he elects to file, Petitioner may address whether a certificate of appealability should be issued in the event he elects to file an appeal from the judgment in this case.  *See* Rule 11(a), Federal Rules Governing Section 2254 Cases (district court must issue or deny certificate of appealability when it enters final order adverse to applicant).

DATED:        October 28, 2010.


TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE